### JAMES I. MOORE ET AL. v. WACO BUILDING ASSOCIATION.

Decided May 25, 1898.

**1. Joinder of Actions—Different Sets of Sureties.**

In an action against the secretary and manager of a corporation, involving his accounts for several years, and the liability of different sets of sureties for the several years, all the sureties may be joined as defendants in one suit, and judgment had against each set of sureties for the amount of their respective liabilities.

**2. Same—Waiver.**

If such joinder were to be held improper the objection might be waived by defendants, and should be held to have been waived where they first raised objection to the misjoinder after answer, examination of the accounts by an auditor demanded by them, and a trial and judgment reversed on appeal.

**3. Auditor's Report—Motion to Strike Out—Exceptions.**

Complaint of the action of the court in refusing to strike out an auditor's report on motion should be based on a bill of exceptions reserved to such ruling.

**4. Auditors—Objection to Qualifications, When Made.**

An objection by defendants to the report of auditors appointed at their request on the ground that the auditors were employes of plaintiff comes too late when not urged until after they have made their examination and report.

**5. Auditor—Construction of Contract.**

It was no grounds of objection to the report of auditors that they exceeded their authority by construing a written contract which determined the compensation to be allowed a party for his services, in passing upon his accounts, where some construction was necessary in order to pass on the accounts, and that given was not held binding upon the court upon the trial.

**6. Assignment of Error—Proposition—Refusal of Charges.**

An assignment that the court erred in refusing a charge requested is too general, unless accompanied with a proposition more specifically pointing out the error.

**7. Limitation—Trust.**

Limitation did not commence to run in favor of an agent occupying an express trust relationship until there was a repudiation of the trust and default in the performance of his duties brought home to the knowledge of his principal.

**8. Same—Examination of Accounts by Principal.**

The fact that the books and accounts of the secretary and manager of a corporation were examined and approved by a committee on behalf of the company would not be conclusive of such knowledge on its part of the state of the accounts as would set limitation running, where the evidence warrants a conclusion that they were misled by confidence in the agent or information derived from him, and did not make such examination as to ascertain the facts.

**9. Agency—Profits by Agent.**

The manager of a building and loan association who so conducts its business as to make profits for himself out of its transactions concerning real estate, after paying to the association the amounts it was entitled to receive under its contracts with the parties concerned, can be compelled to account to the association for such profits.

**10. Same—Acquiescence of Directors—Consideration.**

Knowledge and acquiescence of directors of a corporation in the retention by its manager of profits made out of transactions in the business of the corporation will not estop the corporation nor release such agent from his liability to account therefor.

**11. Error—Cure by Remittitur.**

Error of the trial court in directing the allowance to plaintiff of one of numerous items claimed, not connected with the others, may be cured by remittitur.

**12. Same—Costs.**

The reformation of a judgment on the remission by appellee of a part thereof found to be erroneous will not entitle appellant to a judgment for the costs of appeal where, though the error was called to the attention of the lower court on motion for new trial, it was so done as not to advise the court of the true ground of complaint.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*W. W. Evans, Dyer & Dyer,* and *Chas. A. Jennings,* for appellants.

*W. L. Prather* and *L. W. Campbell,* for appellee.

FISHER, CHIEF JUSTICE.—On September 19, 1891, the appellee, the Waco Building Association, sued the appellant, James I. Moore, and the sureties on six bonds executed by him in favor of plaintiff, as secretary of the building association, for the years 1885 to 1890 inclusive. The suit was to recover for a violation of the conditions of the bonds, growing out of overcharges in commissions due Moore as his salary as secretary, speculations in real estate, notes and other transactions belonging to or wherein the association was interested, and for losses that occurred in keeping the plaintiff's books and accounts, and for failing to account to plaintiff for cash, securities, and property due it. The total sum sued for is about $45,000.

On the 13th of November, 1891, the defendants requested the court to appoint auditors to examine into the matters of account between the plaintiff and the defendants. This request was complied with, and the

court appointed Thomas Dugalby and Horace Pickett as such auditors. They, after a full investigation into the matters of account between the parties, on the 2d day of May, 1892, filed their report wherein they found against the defendants in favor of plaintiffs for the sum of $35,703.07.

The defendants filed answers, denying any indebtedness to the plaintiff and denying the correctness of the auditor's report in many particulars, pleading settlement and limitation as to the items sued for and embraced in the auditors' report. On April 24, 1896, the plaintiff, by supplemental petition, in effect alleged the liability of the defendants for all the items found against them by the auditors in their report, and made the auditor's report a part of its petition, and sued for all the items therein stated.

In the trial of the case on May 14, 1897, the jury returned the following verdict: "We the jury find for the plaintiff against the defendants James I. Moore, Thomas Moore, Luke Moore, T. P. Moore, Bart Moore, and J. C. Frazier, for 1885, the sum of $5834.24, with legal interest thereon from January 1, 1886; and for the year 1886, the sum of $3659.65, with legal interest thereon from January 1, 1887; and for the year 1887, the sum of $178.80, with legal interest thereon from January 1, 1888. And we further find for plaintiff against the defendants James I. Moore, John Moore, T. P. Moore, Luke Moore, Bart Moore, and J. C. Frazier, for 1888, the sum of $1701.04, with legal interest thereon from January 1, 1889; and for 1889, the sum of $8152.59, with legal interest thereon from January 1, 1890. And we further find for plaintiff against the defendants James I. Moore, John Moore, T. P. Moore, Luke Moore, and Bart Moore, for 1890, the sum of $2862.37, with legal interest thereon from January 1, 1891."

Upon this verdict judgment was rendered in accordance therewith in favor of the plaintiff against the several named defendants for the sums respectively found against them.

It appears from the facts, and in accordance therewith we find, that James I. Moore, for the year 1885 to and inclusive of the year 1890, was the secretary of the Waco Building Association; and was, in fact, the general manager of its business affairs, and that it was his duty, as secretary, to keep correct minutes of the stockholders' and directors' meetings, attest the certificates of stock, and to keep all accounts of the association; and his duties required him at all times to give correct information of the condition of the association, and required him to make a detailed annual report of the workings of the same, and to receive and receipt for all payments of principal and interest on all loans made by the association, all rents and other moneys that may be due it from other sources, and to account therefor to the treasurer; and it was a part of his duty to take charge of all bonds, mortgages, contracts, and securities of the association; and he was required to enter into a bond for the faithful performance of his duties. The sureties on his bond for the years 1885, 1886, and 1887 were Thomas Moore, Luke Moore, T. P. Moore, Bart Moore, and J. C. Frazier; and for the years 1888 and 1889, the sureties on his

bond were John Moore, T. P. Moore, Luke Moore, Bart Moore and J. C. Frazier; and John Moore, T. P. Moore, Luke Moore, and Bart Moore were the sureties on his bond for the year 1890. About January 1, 1890, he ceased to be secretary and general manager for the plaintiff.

The auditors' report and the evidence in connection therewith, together with the other evidence in the record and the deductions to be drawn therefrom, warrant us in reaching the conclusion that the verdict of the jury is supported by the facts. The evidence that justifies this conclusion is too voluminous for us to undertake to set out in detail the facts upon which the jury base their verdict, and which we consider sufficient as justifying it. Therefore, we are content with the general conclusion that we have reached, to the effect that there is evidence in the record which will warrant the verdict of the jury.

This case was formerly before this court, and will be found reported in 28 Southwestern Reporter, 1033. There we held that, the action of the plaintiff being upon bonds executed by Moore, the four years statute of limitation would apply, and that the auditors' report would be admissible in evidence not only as to all items not objected to, but also as to the items which were excepted to; and that the auditors' report would be held conclusive as to the items not excepted to; and that the burden was upon the defendants to prove the incorrectness of the report as to the items which they allege to be incorrect.

Appellants in their forty-first assignment of error complain of the action of the court in overruling their exceptions and pleas setting up a misjoiner of parties and causes of action. The contention is that the plaintiff could not sue Moore and the different sets of sureties on his bonds in the same action.

If we could hold that there was an improper joinder of parties and causes of action, we think that the defendants, by their delay in raising these questions, have waived the objections now urged. This action was filed on the 19th of September, 1891. The defendants, on the 6th of October, 1891, filed a general demurrer and general denial. In November, 1891, they applied to the court to appoint auditors, which request was granted, and the auditors, after a long and expensive examination, filed their report on the 2d of May, 1892. October 24, 1892, the defendants again filed a pleading, in the shape of an amended original answer. The case was tried at the October term, 1892, of the District Court, and resulted in a verdict and judgment in favor of the plaintiff, which was appealed to this court and reversed. Finally, on February 4, 1896, which it appears from the statement of the appellants under this assignment is the first time, they by a plea of exception raised the question of the misjoinder of parties and causes of action. The form of the action, and seeking to make the parties liable in the way urged by the plaintiff in its petition, and joining in one action the sureties on the bonds of Moore as secretary, were all matters that could be waived by the defendants if they so desired. The District Court, by virtue of its general authority, had jurisdiction over the parties and a cause of action of this character.

Because the plaintiff elected to bring the suit in the manner in which it was brought does not render it inherently bad, so that the privilege of the defendants to change the form of the action could be urged at any stage of the proceeding. They had the right to come in, if they so desired, and by an agreement waive the objections that they are now seeking to urge; and, if such had been the case, the trial court would not of its own motion have declined to try the case because of the fact that the plaintiff was seeking to hold different sets of sureties liable on different bonds. Now, while it is true the defendants did not expressly agree to waive any objections as to the manner in which plaintiff sued them, still their conduct in delaying the urging of these objections, at this late day, should be held tantamount to a waiver.

Again, no harm resulted to the defendants by reason of the procedure in combining the causes of action and parties in this case, because the verdict of the jury fully and accurately ascertains the amount for which each set of sureties was respectively liable for the several years covered by their bonds. But, independent of all this, in our opinion an action upon the bonds and a joinder of the parties liable thereon were proper to be urged in one controversy. The system of pleading that prevails with us discourages a multiplicity of suits; and if the liability of these sureties could be ascertained in one action, they all being actions of a similar character—in the nature of a breach of the bonds—it was certainly to their interest in the matter of costs and expense that this should be done. The nature of the business in which Moore was engaged for the plaintiff, and its extensive range, would indicate to a pleader, in seeking to hold the sureties liable for his conduct, the difficulty of accurately ascertaining just when the liability of each set of sureties on the respective bonds would commence and end. The liability grew out of many items and matters of complicated book accounts in the conduct of Moore with reference to the business of the association, and it was impossible to accurately determine the extent of the liability of each set of sureties until there was a full settlement and complete inquiry into the conduct of the business conducted by Moore for the full term for which he was secretary and manager, and this was only ascertained after the auditors had made their report. We think, in a case of this character, it was proper to join the sureties on the several bonds in one action.

The appellants in their forty-second and forty-third assignments of error complain of the action of the court in refusing to sustain their motion to strike out the auditors' report. There was no bill of exception taken to the ruling of the court complained of; therefore we do not feel that we are required to pass upon the questions raised by these assignments. But, however, we do not think that any error was committed by the court in this ruling. The principal ground of complaint is that these auditors, when they were appointed, and previous to their appointment, were in the employment of the appellee, and it is urged that they, for this reason, were not qualified to act in the capacity of auditors. It appears that the auditors were appointed at the request of the defendants,

and it does not appear from anything stated in the motion to strike out and suppress their report, but that the defendants knew of all the facts of disqualification at the time and before the auditors were appointed. They were presumably present in court when the appointment of the auditors was made, and if they knew then of any fact tending to disqualify the auditors from acting, it was then their duty to urge it and call it to the attention of the trial court. They made no complaint at that time, nor was this matter then brought to the attention of the court, but long after the auditors had acted and made their report is the first that we hear of objections to their qualification. There was no error in the ruling upon this question.

There is no merit in appellants' forty-fourth assignment of error. In order for the auditors to properly determine what compensation Moore was entitled to, it was necessary that they should put some construction upon the contract that related thereto as to the meaning of the term "gross earnings;" but this was not binding upon the trial court and the jury, and it was not given such effect. As to the compensation that Moore was entitled to, that was a question submitted to and passed upon in the trial court.

Appellants' seventh, eighth, ninth, tenth, and forty-sixth assignments of error are too general to be considered. They are not accompanied with propositions or statements specifically pointing out the errors and the rulings complained of, or giving any reasons therefor, but what we later on say regarding the issue of limitation in addition disposes of the question raised in the forty-sixth assignment of error.

The first assignment of error is as follows: "The verdict of the jury is contrary to the charge of the court as applied to the evidence introduced on the trial of this cause, and the jury totally ignored the charges of the court herein, for the following reasons, to wit: The court in the eighth paragraph of its charge instructed the jury as follows: 'Now, if you believe from the evidence that the directors appointed said committees in 1885 and 1886 as directed by said by-laws for the purpose therein named, and that each of said committees had free access to the books and papers of the association, and that all of the items in the auditors' report for said years appeared in said books and papers, and could have been discovered by said committee for the respective year for which it was appointed by making such examination; and you further find that said committees were not prevented from making such examination by any act or concealment of James I. Moore, and if made as directed by said by-laws, the several items found by the auditors in their report for the said years 1885 and 1886 would have been discovered, and that said committee for each year respectively investigated said books and papers, and made their report to the following annual meeting of the stockholders in January of the succeeding year, and that said report was acted on by the association at its annual meeting, then all the items in the auditors' report for said year 1885 and 1896, or either of them, where such action was taken, are barred by the statute of limitation of four years; and if

you so find, you will not consider or include any of said items found by the auditors for either plaintiff or defendant for said years in any verdict that you may render.' The uncontradicted evidence in this case showed that each and every item contained in the auditor's report for 1885 and 1886 were contained in the books kept by James I. Moore and entered in these two years; and the said committee examining these books had free access thereto, and there was no concealment of anything contained in the books from them, and that by making the same examination made by the auditors, the committee would have found the same items reported by the auditors against the defendant; and therefore, because said evidence was not contradicted, the finding of the jury was contrary to the evidence and contrary to the charge of the court as above set out, and the court erred in refusing to set said verdict aside for said reasons."

The building association, it is true, as stated in this assignment, appointed examining committees to investigate the books and to inquire into the conduct of the business of the association as conducted and carried on by the appellant Moore, and it appears that they had free access to the books and no obstacle was thrown in their way to a complete examination thereof by Moore; but there is evidence which tends to show that Moore in the performance of his duties did not make a full and complete statement of the affairs of the concern and its condition to the examining boards or to the directors of the association; and there is some evidence which goes to show that the investigation of the examining boards was cursory and incomplete, and that they to some extent relied upon the statements of Moore that the books had been properly kept, and the affairs of the concern had been properly carried on and conducted.

It appears from the facts in the record that the books embraced many items, and it was a matter of some difficulty to accurately ascertain and determine the full status and condition of the business transactions of the association during the time that Moore was its secretary and general manager; and there is evidence which has a tendency to show that the limited investigation by the committees was not of a nature calculated to reveal and discover the inaccuracies in the accounts kept by Moore, and the breaches of duties upon his part, which were subsequently developed in the trial of the case.

The committees reported that they found nothing wrong with the books or the conduct of the business as conducted by Moore, and their failure to have made such discoveries is more than likely attributable to the fact that their examination was very imperfect, and to the fact that Moore failed to make known and develop to the examining committees the true condition of the books and affairs of the association. There is evidence which tends to show that some of the officers of the association, including the examining committees, had the utmost confidence in the business capacity and integrity of Moore; and there is a conclusion, which may be warranted from the facts, to the effect that, in view of this confidence, their suspicions were lulled, and that by reason thereof they did not make as full and complete investigation into the affairs of the

concern as otherwise would have been the case if such confidence had not existed. And further, we can not say that all the combinations of facts presented in this charge were true. There is evidence as to some of the facts which might warrant the jury in believing that the entire combination of facts, the existence of which must be established, was not true. But in our view of the law of limitation, as applied to this action, this charge was more liberal in favor of the defendants than they were entitled to.

Moore, by reason of his agency, occupied towards his principal, the building association, an express trust relationship; and such being the case, limitation would not commence to run until there was a repudiation of the trust and a default in the performance of his duties, brought home to the knowledge of his principal. 13 Am. and Eng. Enc. of Law, 683-688; 27 Id., 100-106; Hunter v. Hubbard, 26 Texas, 548; Lewis v. Castleman, 27 Texas, 422. And, as said in Leach v. Wilson County, 68 Texas, 356, "a trustee can not, by an act unknown to the beneficiary, so repudiate his trust as to set the statute of limitation to running against him. The act of repudiation must be brought to the notice of the cestui que trust."

Now, the facts in this case do not show that the defaults of duties upon the part of Moore, which are the basis of the plaintiff's action, were discovered by and made known to the examining boards of the association or its directors before Moore ceased to act as its agent, which was about the 1st of January, 1891. In fact, the nature and the extent of the breaches of duties upon his part were not fully made known and discovered until after the auditors had filed their report in May, 1892. It does not appear, before Moore ceased his official connection with the association, that its directors had notice of conduct that would destroy their confidence in Moore, or that was sufficient to excite an inquiry into the conduct of the business as conducted by him in order to ascertain if he had been violating his duties. He was their trusted agent, charged, we may say, with the general management of their affairs, and they could assume that he would correctly continue in the performance of his duties until they received notice to the contrary. They were not put upon inquiry to ascertain if their trusted agent had violated his trust; but they could act upon the assumption that all the duties imposed upon him would be faithfully performed; and in order to require them to act and take steps for their protection against him, his conduct must be of such an unequivocal character as to convey the information that he had repudiated his trust or violated the duties with which he was charged.

Such being the case, we do not think that limitation would commence to run in favor of Moore and the sureties on his bonds, on the various items set up by the plaintiff, until his shortage as to these sums was discovered. And in this connection, according to our views of this question as just stated, we can dispose of the questions raised in the second, eleventh, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments of error.

We held in the former appeal of the case that the suit being upon the bonds, written contracts, the four years statute of limitation would apply. Now, in these assignments of errors are pointed out some items which were not set up in the plaintiff's original petition, but were for the first time brought into the case and stated in the auditor's report, which was filed on the 2d of May, 1892. Plaintiff, on the 24th of April, 1896, less than four years from the date of the filing of the auditor's report, by a supplemental petition, declared upon these items, and sought recovery therefor, in addition to the items sued for in the original petition.

Now, the facts in the record as previously stated show that, in order to ascertain a true conception of the condition of the affairs of the association, many books of accounts and items of a complicated nature were required to be examined into; and it is a fair conclusion to be reached that it was almost impossible to ascertain the existence of these items until the auditors filed their report. This, it appears, was the first time that the appellee obtained notice that the appellant Moore was liable thereon and had failed to account to the association therefor. The very fact that auditors were required to ascertain the accounts between the parties, presupposes that they might discover and ascertain the existence of items which had not been previously set up in the pleadings of the parties; and the existence of these items, thus for the first time ascertained, would be a proper subject for consideration by the trial court in ascertaining the extent of the liability of the defendants. Therefore, with this view of this question, we do not think that limitation would commence to run against these items before they were discovered and brought into the case by the auditors' report; which, as has previously been stated, was declared on by pleadings of the plaintiff less than four years from the time that the report was made. We think the conclusions and deductions to be drawn from the auditors' report and all the facts and circumstances detailed by the witnesses in the case, warrant the verdict of the jury as to the matters and items complained of in the third, fourth, fifth, sixth, eleventh, and twelfth assignments of errors; and deductions from these facts authorized the jury to conclude that Moore had received, as compensation for his services, more than he was entitled to under the liberal construction that he and some of the directors placed upon the term "gross earnings." He was allowed, according to this construction, as pay for his services, a certain per cent upon the gross earnings of the association. The auditors' report, which we consider as evidence in the case, together with some testimony in connection therewith, tends to show that he received more than he was entitled to. Therefore we can not say, as to this item, that the verdict of the jury is without evidence to support it.

The auditors' report also charged Moore with profits made and retained by him out of transactions with which the association was a party. It appears that the association, in advancing money upon these transactions, was reimbursed for its outlay with the interest which, under the contracts concerning these transactions, it was entitled to receive. Moore,

while agent and manager of the affairs of the association, so handled some of these transactions in a speculative way as to reap a profit and a personal benefit to himself therefrom, after paying to the association the amount of money they were entitled to receive under the contracts with the several parties who were connected with these transactions. Moore did not account to his principal for the profits realized by him. These were charged against him in the final report of the auditors, and were considered by the jury on the trial of the case. He contends that all of these transactions were made known and reported to the directors of the association, and that they had knowledge thereof and tacitly assented to his retaining the profits so made. The contention is that by reason of these facts the association is now estopped from asserting this claim against the appellants.

Neither law nor equity would suffer Moore, while the agent of his principal, to profit by speculations in transactions conducted and carried on for the benefit of his principal. The fact that the principal may have received the outlay of money that was due it from the several parties with whom these transactions occurred, would not justify Moore in retaining the proceeds and the profits made in conducting to a final close these transactions. The agent can not occupy towards his principal an inconsistent position, and his first duty is to his principal; and if there is a profit realized from the transaction which he is conducting for the principal, it belongs, not to him, but to those that he represents. The quiescence of the directors, or their failure or refusal to act in the premises and require Moore to account for the profits so made, did not estop the corporation they represented, nor operate as a release of Moore from his liability as to these items. There is no element of estoppel arising from the fact of the failure of the directors to require Moore to account, with knowledge of the default, and if he was justly indebted and due to the corporation they represented for the items that arose from these transactions, they would have no authority, without consideration, to release him from liability to the corporation they represented. As said in Minor v. Mechanics Bank, 1 Peters, 46: "No act or vote of directors, contrary to their duties, in fraud of stockholders' rights and interests, will excuse the cashier or his sureties when violating the stipulations in his bond well and truly to execute the duties of his office. Such bond covers all defaults in the duties annexed to such office from time to time by those who are authorized to control the affairs of the bank; and the sureties enter into the contract with reference to the rights and authority of the president and directors under the charter and by-laws." The principle here stated is applicable to this case. The profits made out of these transactions justly belonged to the association.

The court by a charge, which is complained of in appellants' forty-fifth assignment of error, instructed the jury that the report of the auditors in evidence was conclusive upon all items which had not been excepted to. This charge to this extent was correct, as was in effect held by us in the opinion rendered on the first appeal of this case. The charge then pro-

ceeded to peremptorily instruct the jury to return a verdict in favor of the plaintiff as to certain items, among which was one of $500, of date January 1, 1897. This item was among many which were excepted to by the defendants in their answer. At a previous day of this term we entered an order to the effect, that as this item was excepted to, we regarded this charge as erroneous, and informed appellee that if this item was remitted we would affirm the judgment of the court below, otherwise we would reverse and remand the cause. Since that time a remittitur has been filed, fully covering this item, with the interest that runs with it. A remittitur as to this item we think was proper, and that it cured any error that might have been committed by the trial court in peremptorily instructing the jury to return a verdict in favor of the plaintiff as to the item.

This item is in nowise connected with the other items upon which the jury base their verdict. It is separate and distinct—certain in its nature and sum, and can be readily separated from the other items stated in the auditors' report. Therefore, as said before, it is proper for us to entertain a remittitur as to this sum; and such being the case, this error being eliminated, we find no error in the record, and the judgment will be reformed and affirmed, less the amount of this item, with the interest accrued thereon up to the date of the filing of the remittitur.

We have had some difficulty in determining what disposition should be made as to the costs of this appeal; but we have concluded, upon full consideration of the subject, although we have reformed the judgment, to tax the costs against the appellants. The appellants in their motion for a new trial urged the point in the court below that the verdict and judgment was incorrect as to this item, as well as others, because it was barred by limitation; and in raising that ground in their motion, there is an expression to this effect: "And these defendants say to the court, that although said items were not excepted to by the defendants herein, the statutes of four years limitation were pleaded thereto," etc. Now, the question here raised is as to the charge of the court in peremptorily instructing the jury to find for the plaintiff as to this item, because it was excepted to in the defendants' answer, and the question is here preserved by assignment of error.

It is apparent that there is an inconsistency between the statement made in the assignment of error and the statement made in the fourteenth subdivision of the motion for a new trial, wherein it is stated that this item, with others, was not excepted to. It was evidently the purpose of the trial court in charging the jury not to peremptorily instruct them to find for the plaintiff as to items that were denied and excepted to in defendants' answer; and the court, in view of the many items before it and that were excepted to, and of many that were not, although however careful, might make a mistake as to some of the items in submitting them to the jury; and it is clear that if the attention of the trial court had been called to the error which is now complained of, in its charge, that it would have been corrected, or a remittitur could and would more than

likely have been filed in the court below, in order to meet and cure the objection to the charge as complained of. But the statement made in the appellants' motion for a new trial, to the effect that this item was not excepted to, was confusing, and was calculated to lead the trial court and counsel for appellee to conclude that no point had been or could be raised to the charge of the court in submitting this item, upon the ground that it was excepted to in the answer. Here was an unequivocal statement in the motion for a new trial that this item was not excepted to. Now, afterwards, is a statement in an assignment of error that it was excepted to in the answer. Now, this confusion upon this question is brought into the record by the appellants, and if the matter had been fully explained to the trial court and it had not been misled by the statement made in the motion for a new trial, the error would have doubtless been corrected before the case reached this court.

Therefore, under the circumstances, we think it would be unjust to charge the appellee with the costs of the appeal.

We have given the questions raised in the case careful consideration, and after full investigation we conclude that no error is shown, except as to the item covered by the remittitur. Therefore, the judgment is affirmed, less the amount covered by the remittitur, with all the costs of the court below and of this court taxed against the appellants.

*Reformed and affirmed.*

Writ of error refused.