### DICKERSON v. LIBERTY NAT. BANK OF PAWHUSKA.

No. 17382. Opinion Filed Jan 10, 1928.

Rehearing Denied March 13, 1928.

(Syllabus.)

1. **Pleading—Sufficiency of Petition to Withstand Demurrer.**

Where a petition, though very inartistic and somewhat unclear, sets forth facts entitling plaintiff to relief against defendant, it is error to sustain a demurrer thereto.

2. **Same—Banks and Banking—Action Against Bank for Failure to Honor Checks of Depositors—Sufficiency of Petition.**

Second amended petition examined; held, that it states causes of action, and, although unskillfully drawn, sufficiently advises defendants of the charge in order that they may prepare their defense, and a dismissal of the cause for failure to properly state a cause of action was error.

Commissioners' Opinion, Division No. 1.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by P. J. Dickerson against the Liberty National Bank. Demurrer sustained to plaintiff's petition, and cause dismissed for failure of plaintiff to properly state cause of action. Judgment reversed, and cause remanded for trial. Reversed and remanded.

P. J. Dickerson, for plaintiff in error.

Wilson, Murphy & Duncan, for defendant in error.

BENNETT, C. The parties will be referred to as they appeared in the trial court. Plaintiff, P. J. Dickerson, brought suit in the district court of Osage county, Okla., against Liberty National Bank on March 2, 1925. Several petitions were filed, to which motions to make more definite and certain and general demurrers were directed. Many of these motions and demurrers were sustained. There was finally filed plaintiff's second amended petition on August 1, 1925, and a demurrer to the same was sustained, and the cause was dismissed on the ground that, although the plaintiff had been indulged repeatedly by the court in order to make his petition, not only more definite and certain, but to conform to our statutes of pleading, the plaintiff had failed to state a cause of action, and from this action of the court in sustaining these demurrers and in dismissing plaintiff's action, this cause is brought here for review.

We think perhaps it will be sufficient to set out an abridgment of the facts alleged in plaintiff's said second amended petition, in order that the correctness of the ruling of the court may be determined.

Plaintiff's petition, in effect, alleges that on January 6, 1923, he had deposits of money in the defendant bank subject to his check, and that while in Oklahoma City some days after said date, he drew several checks within the amount of said deposit against said bank, but that the defendant wrongfully dishonored several of the plaintiff's checks, and in addition violated its promise and oral agreement which it made with plaintiff, to the effect that it would not again dishonor any of plaintiff's checks before notifying plaintiff of the insufficiency of his deposit in bank to meet said checks.

Second. That on January 11, 1923, plaintiff drew a check on defendant in favor of J. C. Lewis for $15; that said check was presented in due course for payment at the bank, but that the bank wrongfully protested said check with the intent and purpose of injuring plaintiff; that notwithstanding said protest, the defendant charged the amount of said protested but unpaid check to plaintiff's account, and that the plaintiff did not discover this fraud of defendant until some two months after said protest, when he received by mail a statement of his account.

Third. For a second count plaintiff states that on January 12, 1923, he drew another check on defendant bank in the sum of $2.75 in favor of Frank Sutton, and that in due course said check was presented to the bank for payment, but that the same was wrongfully protested; that plaintiff did not discover that defendant had returned this check after marking the same "Insufficient funds," and also marking it "Paid," until some two months or more later, when he received his statement of account.

Fourth. For a third count plaintiff states that on or about January 12, 1923, he drew another check on defendant bank in favor of the Salvation Army in the sum of $10, and that this check was likewise presented in due course for payment, but that the

same was wrongfully protested and remained unpaid.

Plaintiff avers that he did not discover this imposition and the charging of this check to his account by defendant until some time after he received from the defendant by mail a statement, which was sent to him more than two months after nonpayment of said check. Plaintiff avers that at all times he had in bank on deposit subject to check sufficient moneys to pay all of said checks.

Fifth. That notwithstanding the fact that defendant failed to pay the aforesaid checks, the defendant charged the same to plaintiff's account and deducted the amounts represented thereby from plaintiff's deposit in bank.

Plaintiff further alleges that the defendant wrongfully refused for a long time to render him a statement after his demand showing the statement of his account and the amount of checks paid. Plaintiff further says that he was compelled to go to Oklahoma City in person to investigate as to what checks had been paid and to whom because of the wrongful failure of defendant to give him information about the checks aforesaid. Plaintiff says that, without his authority, the bank wrongfully deducted the amounts of these checks, aggregating $27.75, from his account without paying the same, and also that defendant misrepresented to the plaintiff the true amount of his balance in bank after the plaintiff had returned from Oklahoma City and after the said checks had been drawn. And in a statement giving additional particulars and entitled plaintiff's "Third Amended Complaint," the plaintiff says that, due to the wrongful conduct of the defendant in refusing him information which he requested, he did not discover that the $10 check had not been paid until the spring of 1924. Plaintiff avers that he has been damaged in his profession, business, standing, and credit in the community, and on that account asks judgment in various sums in addition to judgment for the aggregate sum of the above described checks charged to his account by the defendant but not paid, together with legal interest thereon. Plaintiff alleges that these acts of misconduct on the part of defendant were wilful, wrongful, and done for the purpose of injuring the plaintiff.

The questions for us to determine are: (1) Whether or not the court committed error in sustaining demurrer to the petition, for, if the petition stated facts sufficient to entitle the plaintiff to any relief as against the defendant, then the demurrer should have been overruled; (2) whether or not the court was warranted in dismissing the case for failure of the plaintiff to state a cause of action in his petition and make the same conform to our statutes with respect to pleading.

It will be readily conceded, of course, that a bank which fails and refuses to honor checks properly drawn by its depositor who has sufficient money on deposit in bank subject to check, or which charges up to its customer the amount of the checks which have not been paid, commits a wrong, and a petition setting forth those facts and damages therefrom states a cause of action. So that it appears that the plaintiff has set out in his petition several causes of action against defendant, unless these causes of action are barred by the statute of limitations. It seems to be conceded by the respective parties that the two-year statute of limitations is the one applicable to the facts in the case, the defendant contending that if any wrong has been done it takes its date from the day of refusal of actual payment by the bank of the check rightfully drawn upon it. It also contends that since these checks appear to have been drawn between January 6th and January 12, 1923, as a matter of course, the statute bars each of these actions, since the suit was brought March 2, 1925.

Plaintiff, on the other hand, contends that he had no knowledge and no way of knowing that defendant had wrongfully refused to honor his checks until a statement of account and return of the paid checks, both of which the defendant wrongfully withheld from plaintiff, had been received by him from the bank, as he alleges in this behalf that after repeated demands this statement of account was mailed to him two or more months after the checks had been presented for payment, and also that when the same were received the account showed that these checks had been charged to his account and deducted from the amount of his deposit in bank, but that the paid checks did not accompany the statement, and that it required a personal investigation on his part and a trip to Oklahoma City to determine the true facts, and, as part of these facts, he discovered that the checks had never been paid; some of them were marked "Paid," others were marked "Insufficient funds." The bank returned none of his checks but simply returned a statement showing the amount of his deposit and the deductions from such deposit of the amounts

represented by these checks. He also alleges they gave him misinformation as to his balance in bank.

If these allegations with respect to the actions of the bank are true (and we intimate no opinion on that subject), the bank has not only wronged the plaintiff by turning down his checks, but has taken positive, active and affirmative steps to prevent his discovery of the wrongful conduct. The bank held plaintiff's money for the purpose of meeting his checks thereon. The making out and mailing to plaintiff of an account, which treated the amount represented by these various checks as credits to which the bank was entitled, was a representation that those checks had been properly paid and the amount of the balance shown to be in plaintiff's account less these checks could have but one effect, and that was to represent to him that they had paid the amount of the checks.

Could the bank indefinitely refuse or fail to disclose that it had not paid these checks, and then, upon action by plaintiff, answer, "You ought to have known it sooner and your delay has protected us from our own wrong, although the delay was brought about by the positive act of the bank?" Such would be inequitable and unjust.

In the case of Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 Pac. 174, the second syllabus reads as follows:

"Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud."

The third paragraph of the syllabus reads as follows:

"The mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. There must be something more; some actual artifice to prevent knowledge of the facts; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry."

It seems to us that the action of the bank in charging up to the plaintiff these checks, as if they had been paid, is a clear concealment, and amounts to a misrepresentation on the part of the bank, the effect of which would be to prevent inquiry and to allay any suspicion. See, also, M., K. & T. Ry. Co. v. Wilcox, 32 Okla. 51, 121 Pac. 656.

In the early case of Voss v. Bachop, 5 Kan. 59, the Supreme Court of that state refused to permit the plea of the statute of limitations in bar of an action brought by a client against an attorney for money collected and not accounted for. The court, speaking through Kingman, C. J., held that the allegations of the petition charging that defendant, by his own misrepresentations, had prevented a demand being made on him, was estopped by his own acts from setting up the statute, and cited in support of its position the case of Way v. Cutting, 20 N. H. 190, a case not involving any professional or fiduciary relationship. In quoting from the latter case the court said:

"The general principle of natural justice and of positive law that precludes a party from deriving a benefit from his own wrong has from an early period been applied by courts, both of law and equity, to the construction of the statute of limitations. It has accordingly been repeatedly held that a party shall not be protected by the lapse of time during which he has, by his own fraud, prevented the party whom he has injured from asserting his rights at law, and that he, against whom the statute bar is interposed, may avoid it by showing that he has been kept in ignorance of his claim till within the period limited by law for bringing his suit by the fraudulent practices of the party setting up the defense."

In the case of McMullen v. Winfield Bldg. & Loan Ass'n, 64 Kan. 298, 67 Pac. 892, there was default made more than six years prior to the commencement of the action; but it was charged that the secretary of the company artfully and fraudulently concealed his misappropriations by making false entries in the books, and that the association had no knowledge of his fraudulent and wrongful acts until shortly before bringing its action. The court said:

"Did this fraudulent concealment interfere with the operation of the statute of limitations? Did the cause of action accrue when the fraud was committed, or not until the fraudulent conduct and defaults were discovered? Courts of equity have been holding that, independent of a statutory provision, the defendant's fraud and concealment of a cause of action will postpone the running of the statute of limitations until such time as the plaintiff discovers the fraud, and this upon the theory that the defendant, having by his own wrong and fraud prevented the plaintiff from bringing his action, cannot take advantage of his own wrong by setting up the statute as a defense. Some authorities confine this rule to proceedings in courts of equity, but hold that at law neither fraud, concealment, nor other circumstance will affect the operation of the

statute, unless it is expressly provided for by statute. The weight of authority in this country and in England applies the rule to actions at law as well as to suits in equity. In Bailey v. Glover, 21 Wall. 342 (22 L. Ed. 636), Mr. Justice Miller, in holding that concealed fraud was an implied exception to the statute of limitations, equally applicable to suits at law as well as in equity, said: 'Statutes of limitations are intended to prevent frauds, to prevent parties from asserting rights after a lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.' " To the same effect: Munson v. Hallowell, 26 Tex. 475; Rosenthal v. Walker, 111 U. S. 185, 28 L. Ed. 395; Traer v. Clews, 115 U. S. 528, 29 L. Ed. 467; Moore v. Waco Bldg. Ass'n, 19 Tex. Civ. App. 68, 45 S. W. 974.

A wealth of authorities supporting the view herein expressed may be found at pages 248 and 249, 37 Okla. Reports, and following these cases there is an array of authorities holding to the contrary doctrine, but our court holds strongly with the weight of authority as herein indicated.

The extent of our holding in this case is: (1) That the petition stated causes of action; (2) that the allegations of the petition accepted as true, as we are obliged to do, are sufficient to prevent the bar of the statute of limitations: (3) that the sustaining of a demurrer to the petition was error; (4) the dismissal of the case by the court upon the ground that the petition did not state cause of action, and, for that reason, the order of the court had not been complied with, was error.

We have examined with some care the various petitions, amended petitions, and motions and exceptions, set out as a part of the record in this case. They lack a great deal that model pleadings should contain and contain a great deal that model pleadings should lack. They are somewhat confusing, but having in mind that our statute prescribes no set form of pleading, and that this matter is left largely to the good sense, sound judgment, and wise discretion of the members of the bar, supervised, of course, by the oversight of the various trial courts, it must be remarked that not all unsatisfactory pleadings are for that reason, demurrable,

and, also, having in mind that our courts are organized for the final settling of disputes between citizens, and the adjudication of their rights, and that pleadings are in no sense the object of our court activities, but simply a mode and method of carrying out their real purpose, it is often found necessary to overlook most informal petitions in the interest of the accmplishment of the final purposes of the court. We understand, too, how much difficulty the courts have in attempting to have the pleadings made clear, certain and definite, and to contain no foreign matter, and we realize how difficult it is to make the pleadings reflect always the exact legal contentions of the parties; but these difficulties must not stand in the way of the accomplishment of the real purpose of the court. We do not commend at all these petitions, but we do not hold that the rights of these parties may be determined under the allegations set out in the plaintiff's petition, for all of which reasons we hold that the judgment of the trial court in sustaining the demurrer to this petition and the dismissal of the action was error, and it is, therefore, ordered that the cause be remanded to the trial court, in order that the issues may be made up and the trial proceeded with in conformity with this opinion

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.