### FIRST STATE BANK v. NATIONAL BANK OF COMMERCE.

#### No. 4337.

Court of Civil Appeals of Texas. Amarillo.

May 11, 1936.

Rehearing Denied Dec. 14, 1936.

W. H. Russell, of Hereford, and Morgan, Culton, Morgan & Britain, of Amarillo, for appellant.

Carl Gilliland, of Hereford, and Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellee.

JACKSON, Justice.

The First State Bank & Trust Company of Hereford, Tex., which we shall designate as the Hereford Bank, and the National Bank of Commerce of Amarillo, Tex., which we shall call the Amarillo Bank, in December, 1920, had an agreement by which the Hereford Bank could indorse certain notes owned, payable to, and held by it, and send them to the Amarillo Bank which would, if they were acceptable, discount such notes and advance to the Hereford Bank an agreed part of the face thereof.

About December 20, 1920, O. M. Shore executed his note for $4,103.40, payable to the Hereford Bank on March 20, 1931, with interest thereon at the rate of 10 per cent. per annum from maturity. The note was indorsed by the Hereford Bank and sent to the Amarillo Bank for discount, but was returned because the security thereon was considered insufficient. O. M. Shore then executed to the Hereford Bank a deed of trust covering section 40, block K–8, and the northwest one-fourth of section 30, block K–7, in Deaf Smith county, to se- cure the payment of said note, which, with the deed of trust, was later forwarded to the Amarillo Bank and the note accepted and discounted, though the deed of trust lien was not transferred to the Amarillo Bank.

Prior to the due date of the note, O. M. Shore contracted to sell the above-describ-ed land, together with other lands owned by him, to H. H. Halsell, and to consummate the sale it was necessary for him to obtain a release of said deed of trust. In order to secure such release Mr. Shore and the Hereford Bank agreed to deliver to the Amarillo Bank, in lieu of the deed of trust, certain vendor's lien notes he was to receive from H. H. Halsell as a part of the consideration for the conveyance of the land, to be held by said bank as collateral security for its said note. On this understanding the Amarillo Bank consented to the substitution of the vendor's lien notes for the deed of trust, and to the release of such deed of trust by the Hereford Bank.

O. M. Shore conveyed the land to H. H. Halsell for a consideration of $54,645, which the deed recites was paid $25,000 in cash, the assumption of a note of $17,000 payable to the order of the American National Insurance Company and the execution of five vendor's lien notes each for the sum of $2,529, bearing interest at the rate of 7 per cent. per annum, and maturing on or before two, three, four, five, and six years after date, respectively.

The record shows that O. M. Shore owed the Hereford Bank other obligations in addition to the note for $4,103.40 held by the Amarillo Bank, and the five vendor's lien notes executed by H. H. Halsell to O. M. Shore were by him, on May 17, 1921, transferred to the Hereford Bank. When the Amarillo Bank demanded the possession of said notes, it was informed of these additional obligations held against O. M. Shore by the Hereford Bank, which promised, if permitted to hold said notes in trust for the Amarillo Bank, to collect them and apply the proceeds first to the payment of the note of the Amarillo Bank, and it would thereby be enabled to keep any excess above the amount necessary to discharge the indebtedness to the Amarillo Bank and credit it upon these additional obligations.

Two of these Halsell notes the Hereford Bank sold, or hypothecated, to the Stock Yards National Bank of Fort Worth, Tex.

H. H. Halsell defaulted in the payment of said five vendor's lien notes, and the Hereford Bank foreclosed the lien upon the land securing such notes, and on October 31, 1922, obtained title to the land, subject to the $17,000 due the American National Insurance Company.

On January 2, 1923, the Hereford Bank sold and conveyed to O. M. Shore the land it had thus acquired, subject to the lien se-

curing the $17,000 due the American National Insurance Company, and retained a lien to secure the payment of three certain notes. The first, which constituted a second lien, was for the sum of $5,911.76, payable to the Stock Yards National Bank of Fort Worth, and was accepted in lieu of the two Halsell vendor's lien notes theretofore transferred to said bank by the Hereford Bank. The second constituted a third lien and was for the sum of $8,519.49, payable to the Hereford Bank, and represented the other three of the Halsell vendor's lien notes. The third, which constituted a fourth lien, was for the sum of $8,822.83, payable to the Stock Yards National Bank, and was in consideration of the obligation of such bank to pay the taxes on the land and interest, for a period of five years, on the $17,000 note held by the American National Insurance Company.

On March 17, 1926, the Hereford Bank sold and transferred this second note, which was payable to it, to the Stock Yards National Bank, and received in cash the face of the note and the accrued interest thereon.

On April 26, 1926, subject to the first lien of the American National Insurance Company, O. M. Shore conveyed the land to O. W. Matthews, the land man of the Stock Yards National Bank, for the recited consideration of the payment, cancellation, and release of said three vendor's lien notes which were then held by the Stock Yards' National Bank, and said bank executed a valid release of said three notes.

The record shows that the note for $4,103.40 that the Amarillo Bank had accepted and discounted for the Hereford Bank had been renewed from time to time, and that in addition thereto O. M. Shore had also become indebted to the Amarillo Bank for the sum of approximately $12,000 for·which it had obtained a lien on what is designated as the "Baxter Springs property and furniture in a hotel at Walters," all in the state of Oklahoma.

On June 28, 1927, O. M. Shore executed his note payable to the Amarillo Bank for the sum of $4,201.50, payable on demand, in renewal of the original note accepted and discounted by the said Amarillo Bank for $4,103.40.

On October 20th thereafter· the Hereford Bank become insolvent, was liquidated and its entire assets purchased by the First State Bank of Hereford which, as a consideration therefor, assumed "all liabilities and obligations of the First State Bank & Trust Company, Hereford, Deaf Smith County, Texes, except the liabilities of the said First State Bank & Trust Company, Hereford, Deaf Smith County, Texas, to its stockholders as such."

The Amarillo Bank, on October 19, 1931, instituted this suit in the district court of Deaf Smith county against the defendant, First State Bank of Hereford, Tex., to recover damages for the alleged conversion by the Hereford Bank of the Halsell notes.

The plaintiff pleaded the agreements. pertaining to the acquisition by it of the note of O. M. Shore for the sum of $4,103.40, the renewals thereof, the indorsements by the Hereford Bank, the lien created by the deed of trust described therein to secure the payment of the note, the substitution of the five Halsell notes therefor, the trust capacity in which the Hereford Bank was acting, the violation of such trust, the conversion of said Halsell notes, the insolvency of the Hereford Bank, its liquidation, and the purchase of its entire. assets by the defendant for and in consideration of the agreement to pay the obligations of said Hereford Bank.

In an amended petition filed March 1, 1934, the plaintiff repeated the substance of the allegations contained in the original petition, but set out in greater 'detail the transactions by which it claimed the conversion was accomplished. The plaintiff further alleged that at the time the trust agreement was made, December 6, 1922, O. M. Shore owed it obligations, in addition to that evidenced by the note indorsed by the Hereford Bank and its renewals, and such trust agreement was to the effect that the proceeds obtained from the Baxter Springs property in Oklahoma should be applied first to the payment of such additional obligations, and if the court should determine the letter of said date does not so.provide, then such letter does not correctly express. the agreement, is ambiguous, and parol testimony will be offered to show the trust agreement.

The defendant answered by general demurrer, general denial, pleaded the statutes. of two and four years' limitation; alleged that it was agreed between the Hereford Bank and the Amarillo Bank that when the Baxter Springs property was sold, the· proceeds thereof should be applied first to the Shore indebtedness upon which the Hereford Bank was liable; that the plaintiff had realized upon said Baxter Springs.

property, and if the proceeds thereof were applied to the payment of said indebtedness such obligation would be discharged.

The case was tried to the court without the intervention of a jury, and judgment rendered that the Amarillo Bank should recover of the First State Bank of Hereford, Tex., the sum of $5,805.14, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment, and all costs of suit.

The appellant challenges as error the action of the trial court in holding that the appellee's cause of action was not barred by the four years' statute of limitation (Vernon's Ann.Civ.St. art. 5527).

■ All the fact issues necessary to support the judgment, if warranted by the testimony, are presumed to have been found in favor of the judgment. The evidence is sufficient to warrant the conclusion that the appellee had no notice of and did not discover the conversion of the Halsell notes by the Hereford Bank until some time during the year 1928, and there is no testimony that notice of the disposition and conversion of the Halsell notes by the Hereford Bank had been conveyed to the appellee.

■ The relation of a trustee and the cestui que trust existing between the Hereford Bank and appellee was created by express agreement, and therefore constituted an express trust.

In Moore v. Waco Building Ass'n, 19 Tex.Civ.App. 68, 45 S.W. 974, 977 (writ refused), the court says: "Moore, by reason of his agency, occupied towards his principal, the building association, an express trust relationship; and, such being the case, limitation would not commence to run until there was a repudiation of the trust, and a default in the performance of his duties, brought home to the knowledge of his principal. 13 Am. & Eng.Enc.Law, 683–688; 27 Am. & Eng.Enc.Law, 100–106; Hunter v. Hubbard, 26 Tex. [537] 548; Lewis v. Castleman, 27 Tex. [407] 422. And, as said in Leach v. Wilson Co., 68 Tex. [353] 356, 4 S.W. [613] 614, 'a trustee cannot, by an act unknown to the beneficiary, so repudiate his trust as to set the statute of limitation to running against him. The act of repudiation must be brought to the notice of the cestui que trust.'" See, also, Perry on Trusts and Trustees (6th Ed.) vol. 2, par. 863; annotations, 103 A.L.R. 430.

■ The last renewal note executed is dated June 28, 1927, payable to the appellee on demand, and since the original petition was filed on October 19, 1931, less than four years after the appellee had knowledge of the conversion of the Halsell notes, limitation had not run, and the purchase, on October 20, 1927, by appellant of the entire assets of the Hereford Bank, and its agreement to pay, as a consideration therefor, the obligations and liabilities of said Hereford Bank, was a valid and enforceable contract.

The appellant contends that appellee recovered a judgment on the cause of action set up in its amended petition, which was a new and distinct cause of action from that alleged in the original petition, and since the amended petition was not filed until March 1, 1934, the cause of action upon which appellee recovered was barred by limitation.

■■ Without stating at greater length than has heretofore been done the allegations in the original and amended petitions, in our opinion this contention is not tenable. The amended petition is an amplification of the allegations of fact contained in the original petition, but in our opinion is not wholly based upon and does not grow out of a new, distinct, or different transaction and occurrence.

"An amended pleading which is merely an amplification of the original pleading does not set up a new cause of action. And, where the plaintiff, by amendment, sets forth the same cause of action more correctly, or specifically then in his original petition, it is not a new suit, and the statute of limitations will not avail for the period between the original and amended petition." 28 Tex.Jur. p. 219, par. 122.

Article 5539b, Vernon's Ann.Civ.St., provides: "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct, or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, up-

on application of the opposite party, the court may postpone or continue the case as justice may require."

See, also, Schneider v. McClory (Tex. Civ.App.) 83 S.W.(2d) 352 (writ refused); Ferguson Seed Farms, Inc., v. Ferguson (Tex.Civ.App.) 52 S.W.(2d) 354.

The appellant contends that the judgment of the court against it was not warranted because the testimony shows that the note on which the Hereford Bank was liable had been paid.

The renewal note, dated June 28, 1927, payable to the appellee on demand, contained a recitation to the effect that the maker had deposited as collateral "the following described property, to-wit: Bruce note $3500." The testimony relative to such recitation and the Bruce note is uncertain and unsatisfactory. Mr. Shore says that he has no recollection of ever owning such a note, and had no knowledge of why such note was recited as collateral to the note in which it was mentioned. However, the records of the bank, and the testimony of its officers, are sufficient to justify the conclusion that the Bruce note was made to the bank as accommodation paper, was not collateral to secure the payment of any note, and was not to be and was never collected, and the court was authorized in refusing appellant any credit for such Bruce note.

The letter dated December 6, 1922, addressed to appellee, which purports to restate the trust agreement, after providing in effect that enough of O. M. Shore's collateral in the possession of the Hereford Bank would be held by it to guarantee the payment of appellee's note, contained this provision: "It is understood, however, that the collateral that you now have securing said note shall be held as additional collateral, and in protecting said amount above mentioned it is also understood that it is to be 'joint collateral'. I mean by this the deed of trust that you have on the Baxter Springs property and the chattels which you hold on the furniture in the hotel at Walters, Oklahoma."

Appellant pleaded, and here contends, that the words "joint collateral" in this provision required the appellee to apply any proceeds realized from the Baxter Springs property to the payment of the Shore indebtedness on which the Hereford Bank was liable.

"Joint collateral" must be given its ordinary meaning and interpreted in the light of the surrounding circumstances and the connection in which such words are used since they have no fixed legal meaning. Obviously, so interpreted, they do not mean that the proceeds obtained from the Baxter Springs property shall first be applied to the payment of the Shore note on which the Hereford Bank was liable. Neither do they necessarily mean that such proceeds must be applied equally on said note and the other obligations held by appellee against O. M. Shore, since they may mean a joint, but an unequal, interest in the proceeds realized from such collateral. Hence, we conclude that the meaning of the words "joint collateral," as used in the letter, is ambiguous.

The record discloses no consideration passing to the appellee for an agreement to apply the proceeds of the collateral it held to secure the other obligations it had against O. M. Shore before such obligations were discharged to the payment of the note on which the Hereford Bank was liable. The oral testimony shows without dispute that the real agreement was that if appellee realized from the Baxter Springs property more than was required to pay such other obligations, the excess should be credited on the note on which the Hereford Bank was liable. The record discloses that the appellee realized the sum of $4,905.63 on the Baxter Springs collateral, which was credited on the other obligations due it by O. M. Shore, and that nothing was obtained from the furniture in the hotel at Walters. It is not claimed that the note was paid by the Hereford Bank or Mr. Shore, unless the Bruce note and the proceeds of the Baxter Springs property should be applied to the payment thereof.

The judgment is affirmed.