## KAISER et al. v. NEWSOM.

### No. 13567.

Court of Civil Appeals of Texas. Fort Worth.

June 25, 1937.

Rehearing Denied Sept. 17, 1937.

W. S. Moore, of Gainesville, and R. R. Bell and H. L. Stuart, both of Oklahoma City, Okl., for appellants.

Cecil Murphy and John W. Culp, both of Gainesville, for appellee.

SPEER, Justice.

F. A. Kaiser and Steve Fette, as plaintiffs, sued Frank C. Newsom, hereinafter referred to as defendant, in the district court of Cooke county, Texas, to recover a certain oil and gas lease, subject to the payment by plaintiffs to defendant of the amount the latter paid for it, and that defendant be held to be a trustee holding said lease for the use and benefit of plaintiffs.

Plaintiffs' third amended petition, upon which the case was tried, discloses their cause of action, in substance, to be as follows: That during the latter part of February, 1936, they contracted to purchase from Faught and others an oil and gas lease on 160½ acres of land near Muenster, in Cooke county, Texas, at the agreed price of $1605 and certain additional amounts to be paid in oil runs if and when produced from the leased premises; that plaintiffs were advised by the lessors, on March 3, 1936, that the lease was executed and ready for delivery; that it was in the Justin State Bank and would be delivered upon payment of the consideration; that subsequent to contracting for the lease and prior to March 3, 1936, plaintiffs had taken defendant into their confidence and told him of their purchase, the price paid by them, and agreed with defendant that he should share in the lease; that by an oral agreement, defendant was to pay the $1,605 bonus, and pay to plaintiffs $600; and that when the lease was procured they would own it in the proportion of an undivided 140 acres by defendant and an undivided 20 acres by plaintiffs.

The pleadings further disclose that plaintiffs and defendant went to Justin on March 3, 1936, with a view to paying the consideration to lessors and getting possession of the lease; that defendant offered to make payment by giving a draft on a Tulsa bank, but this was not acceptable to the lessors; that an agreement was then made that defendant should have until March 6, 1936, in which to make payment for the lease, and in the meantime to have the title examined. There is a general allegation to the effect that plaintiffs and defendant were engaged in a joint enterprise and that their contract and agreements created a fiduciary relation between them.

It was further averred that plaintiffs relied upon defendant to, in good faith, carry out his agreement to purchase the lease

from them and in turn to pay to lessors the amount promised by plaintiffs when the lease was contracted for, but that defendant became unfaithful to his trust; that he did, in bad faith and with the intention of defrauding them out of the rights they had acquired by the contract, purchase said lease from lessors on March 10, 1936, taking the identical lease contract purchased by plaintiffs, in his own name. It was further alleged that defendant by his fraudulent conduct and lack of good faith with plaintiffs forfeited any rights he may have acquired by the purchase of the lease, except in so far as the $1605 paid by him was concerned. That on the night of March 5th, before the consideration was to be paid to lessors at 10 o'clock a. m. on the next day, the defendant advised plaintiffs that he was not going to carry out his promise made with them relating to said lease.

Prayer was that plaintiffs have judgment decreeing to them the title to the lease subject only to the right of the defendant to the return of the purchase money of $1605, and that defendant be declared only a trustee ex maleficio for plaintiffs.

Defendant answered by general denial and specially that it was true plaintiffs had contracted to purchase the oil and gas lease at the price named when tendered by lessors. That the lessors had agreed to sell at the price named upon the fraudulent promise of plaintiffs that they were ready, able, and willing to pay for same when executed and tendered; that plaintiffs were unable to pay for the lease when tendered, and procured from the lessors an option of additional time until ten o'clock a. m. of March 6th in which to make payment; that after repeated efforts to sell the lease for funds with which to make payment, plaintiffs approached defendant, who after considering the matter agreed to pay to plaintiffs $2205 for the lease, and permit them to retain twenty acres of same, conditioned that the title was good and they would furnish him with an abstract of the title and give him time in which to have it examined. He further answered that he did in fact accompany plaintiffs to Justin on March 3d, and there, with plaintiffs, talked with the lessors; that plaintiffs then and there induced the lessors to extend time of payment until 10 o'clock a. m. on March 6th, to enable them to make payment, procure an abstract, and permit defendant to have it examined; that plain-tiffs having failed to procure and furnish the abstract of title, the defendant told plaintiffs on the evening of March 5th that he had decided not to purchase the lease.

The answer of defendant further shows that about noon of March 6th he learned that a showing of oil sand had been encountered in a well being drilled on an adjoining lease, and then determined to ascertain if the title to the land in controversy was good, and if it had not been previously leased, to endeavor to lease it; that after the lessors had tried to sell the lease to others defendant did lease it from the lessors, and took the lease in his own name.

There was another defense pleaded raising the validity of plaintiffs' alleged contract under the statute of frauds, but the matter does not appear to have been urged to the court or jury.

The pleadings of all parties are lengthy, and the statement made by us above is substantially correct and more especially pertaining to those allegations upon which testimony was offered and which are pertinent to the errors assigned.

The case was tried to a jury upon special issues submitted by the court. The issues were answered favorably to defendant; judgment was entered for defendant on the verdict; and plaintiffs have appealed.

We think it will prove helpful to give the substance of the issues submitted with their answers:

1. Prior to 10 o'clock a. m. of March 6, 1936, defendant Newsom did not act with a fraudulent intent to deprive plaintiffs Kaiser and Fette of the benefit of any contract they had made with him.

2. Defendant Newsom, in good faith, declined to accept the lease before 10 o'clock a. m. on March 6, 1936, because plaintiffs had failed to procure for him an abstract of title to the lease for examination before that time.

3. The plaintiffs Kaiser and Fette, at the time they agreed to purchase the lease from lessors, did not intend to take and pay for the lease, if they could not sell the same to someone else.

4. The defendant Newsom did not take the lease in his own name with the fraudulent intent to deprive the plaintiffs of the benefit of any contract they had made with him.

Plaintiffs tried this case, apparently, upon the theory that under the conditions of

the agreement tentatively entered into between them and defendant, a fiduciary or confidential relation existed between the parties to such an extent that the rule of "utmost good faith" by and between them would apply. In its broadest sense such a rule should always prompt the acts of parties in dealing with others; yet the "fiduciary" relation created and recognized by law implies more than that. This close relation has its inception in the obligation of one to another when they are partners in a joint enterprise, between trustee and cestui que trust, guardian and ward, and in other instances not necessary to enumerate. Peckham v. Johnson (Tex.Civ. App.) 98 S.W.(2d) 408, and authorities there cited.

The principle discussed last above applies only after the relation has been created, either by acts of the parties or by decree of court, and cannot be relied upon pending a negotiation, which, if culminated, will create the fiduciary relation. Plaintiffs' petition alleges the parties agreed that when the deal was accomplished defendant was to have an undivided 140 acres and plaintiffs should have an undivided 20 acres in the lease. The testimony was conflicting upon this point; plaintiffs contending the agreement was as pleaded by them, while the defendant claimed the lease was to be divided in a way so that plaintiffs' twenty acres would be located on the north of the tract. If defendant's contention prevailed, there would have been no joint enterprise. Under such a conflict in the testimony, an issuable fact arose necessary to establish whether or not the parties contemplated a partnership or joint enterprise. Under plaintiffs' allegations, the burden rested with them to establish the facts relied upon. No issue was given by the court nor was one requested by plaintiffs on the point. Under such conditions, no grounds for reversal are shown. Article 2190, as amended by Acts 42d Leg., c. 78, § 1 (article 2190, Vernon's Ann.Civ. St.)

Under plaintiffs' (appellants') first and fourth propositions under their twenty-fourth assignment of error, they complain that the trial court erred in refusing to grant them a new trial and in refusing to enter judgment for them on their motion non obstante veredicto. This assignment and all propositions thereunder must be overruled. From what we have already said it will be seen a fiduciary relation between the parties was not shown, whereby plaintiffs claim they would have been entitled to an instructed verdict; nor was there error in the court's failure to render judgment for plaintiffs notwithstanding the verdict of the jury for the reasons: (a) If they were not entitled to a peremptory instruction, then the motion would fail; and (b) if under other conditions the motion non obstante veredicto could have been granted, the record does not disclose that any notice of the motion was given or a time set for hearing. We think it unnecessary to discuss this further than to cite article 2211, Vernon's Ann.Civ. St. (as enacted by the 42nd Legislature of 1931, c. 77, § 1); Hines v. Parks (Tex. Com.App.) 96 S.W.(2d) 970; Cosey v. Sovereign Camp of American Woodmen, 103 S.W.(2d) 1076, by this court.

Another proposition relied upon by plaintiffs is that the court erred in the first special issue when he inquired if defendant was guilty of fraud in connection with the transaction prior to 10 o'clock a. m. of March 6th. They contend the inquiry should have covered the time up to March 10th when defendant purchased the lease. We see no merit in this contention. To consider plaintiffs' pleadings in their most favorable light, the time for acceptance of payment by lessors was extended to 10 o'clock of March 6th, and that defendant told them on the night of the 5th that he was not going to complete the deal. Defendant's allegations as well as his testimony showed that he had agreed to take the lease and pay plaintiffs for it if they would furnish him an abstract, showing the title to be good; but that plaintiffs having failed to do this he notified them on the night of March 5th that he would not take the lease. In response to an issue submitted, the jury found that defendant in good faith declined to purchase the lease on March 5th, because no abstract had been furnished him. If the furnishing of an abstract within the time mentioned was a part of the consideration for defendant to take the lease and it was not furnished (and there is no contention by plaintiffs that one was furnished), defendant had a legal right to decline to go on with the deal, and he could not be charged with a fraudulent intent to do a thing he had the right to do. Plaintiffs insist that since defendant afterwards purchased the lease without first being furnished with an abstract, his excuse that none was previously furnished by plaintiffs was a fraud on

them and an evidence of bad faith on defendant's part; but, as stated, that contention was found against plaintiffs in the second issue.

■■ A challenge is made of issue No. 3, wherein it was inquired if plaintiffs intended to pay lessors for the lease if they could not first sell it to someone else; it is claimed there was no such issue raised by the pleadings and was irrelevant to the rights of plaintiffs to have defendant carry out his contract of purchase from them. We think the allegations by defendant, to the effect that plaintiffs' representations to the lessors that they (plaintiffs) were ready, able, and willing to purchase the lease, were false and fraudulently made, were sufficient to warrant the introduction of testimony on the point. The plaintiffs testified, however, that they were able to pay the contract price; but it remains that they did not do so before 10 o'clock a. m. of March 6th, the time set by lessors and the parties here, for payment. After defendant advised plaintiffs on the evening of March 5th that he would not take the property, plaintiffs could not decline payment for their purchase and claim title, purchased by defendant subsequently. That is precisely what they are attempting to do as disclosed by the prayer in their petition. The assignment must be overruled.

■■ In connection with their propositions above discussed, plaintiffs complain that their three requested special issues should have been given in lieu of those submitted by the court. We do not agree with this contention, and even if they had been correct in substance they each failed to, in any form, place the burden of proof, and for this reason, if for no other, there was no error in their refusal. A requested issue must be in such form as the court can properly submit it as presented. Texas Jurisprudence, vol. 41, p. 1050; Speer's Special Issues, p. 371, § 251.

■■ Complaint is made at the court's action in allowing defendant's counsel to ask one of the plaintiffs and in requiring him to answer an inquiry disclosing that he was operating slot machines in Muenster, because it was immaterial and prejudicial. Defendant had alleged plaintiffs had fraudulently represented to the lessors that they were ready, able, and willing to buy the lease when it was not true; it was in this connection that the inquiry was made. Again plaintiffs complain by bill of exception to inquiries by defendant's counsel if it was not true plaintiffs did not intend to take the lease unless they could sell it and thereby procure the money with which to make payment. We think the allegations of defendant sufficient to warrant such inquiries and certainly no unwarranted prejudicial effect could come from such inquiries to elicit testimony in support of the pleadings. There is no merit in these assignments.

■■ Nor do we think there is any error shown in plaintiffs' seventh proposition complaining of the testimony of defendant that he had no intention of defrauding plaintiffs out of the lease at the time he agreed to buy it. He had the right to state his own intentions and give any reason he had in mind at the time or even at any other time for his conduct. He did testify rather definitely that the reason he did not purchase the lease was because plaintiffs had failed to furnish him with an abstract of the title as agreed upon between them.

■■ Propositions Nos. 8 and 9 are based upon assignments of error Nos. 22 and 23, complaining that counsel for defendant argued to the jury that plaintiffs did not intend to pay for the lease unless they could induce some other person to buy it from them before making payments. Based upon what we have said about the pleadings and testimony on this point, we think no error is shown.

■■ By their tenth proposition, plaintiffs complain that a new trial should have been granted for newly discovered evidence. This is based upon an affidavit of R. T. Washburn, attached to the motion, in which it is shown that the witness heard defendant say during the latter part of February or early in March that he had purchased a lease from Kaiser and someone else, near Muenster, but that he did not think he would go through with the deal, as he thought he could "lose" or "ditch" these parties and buy the lease from the owners. Assuming that the motion was in proper form and that the witness would testify to what was contained in the affidavit, in the view we take of this case we do not think the newly discovered testimony required the granting of a new trial. In the first place, it is not at all certain that the purported statement of defendant was prior to the time given for payment of the lease at 10 o'clock March 6th; and even if it was, it cannot be assumed de-

.fendant did not have in mind that plaintiffs would not furnish an abstract in time to enable him to carry out the contract at the time agreed upon. In the second place, if the statement was made after the time had expired, proof at a subsequent trial that defendant would attempt to buy the lease independent of what plaintiffs had said and done could afford them no relief, since he would have a right to do so and there would be no fraud on his part to do it. Moreover, since it is indisputably true that no abstract was furnished to defendant within the agreed time, he had the right to decline to go on in the transaction. If the testimony for which plaintiffs seek a new trial had been available and produced upon this trial, it would not have affected defendant's privilege to abandon the contract under the circumstances. The testimony shows conclusively that the lease became more attractive shortly after defendant had called the deal off than it was immediately before, and it cannot be said this act did not prompt the defendant to later make an independent investigation of the title which, with the enhanced value, induced him to buy the lease. We do not believe there was error in the denial of a new trial.

All assignments of error are overruled, and the judgment of the trial court is affirmed.