IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20167

_____


EXPANSION PLUS INCORPORATED,

                                    Plaintiff-Appellant,


                         versus

BROWN-FORMAN CORPORATION;
NABANCO MERCHANT SERVICES CORPORATION;
FIRST FINANCIAL BANK;
NATIONAL BANCARD CORPORATION'S;
RANDOLPH HUTTO;
LOUISE F ADAMS;
THOMAS J HOLMES, JR.;
HOMES FAMILY LIMITED PARTNERSHIP,

                                    Defendants-Appellees.


*****************************************************************

BROWN FORMAN CORPORATION,

                                    Plaintiff-Appellee,


                         versus

EXPANSION PLUS INCORPORATED; ET AL

                                    Defendants,

EXPANSION PLUS INCORPORATED,

                                    Defendant-Appellant.


_____

Appeal from the United States District Court
For the Southern District of Texas

_____

January 12, 1998

Before HIGGINBOTHAM and STEWART, Circuit Judges, and WALTER[*],
District Judge.

HIGGINBOTHAM, Circuit Judge:

_____

    [*] District Judge of the Western District of Louisiana, sitting
by designation.

This case requires us to determine the obligations of the parties not to disclose information about the subject matter of their agreement. Based on our examination of the parties' negotiations and the documents evidencing their agreement, we hold that at the relevant time, Brown-Forman did not owe EPI a duty not to disclose. The judgment of the district court is AFFIRMED.

I

Expansion Plus, Inc., developed a credit card "data capture" and "paper processing" program. After implementing the Program on a small scale, EPI sought a national expansion. EPI contacted Brown-Forman about working together to promote the Program. The two companies conducted negotiations during which EPI disclosed confidential information to Brown-Forman. Both parties recognized the confidential nature of the information disclosed. These initial negotiations led to a Master Agreement, executed in 1987. The Master Agreement contained a non-disclosure provision under which Brown-Forman agreed not to disclose any information relating to the Program and to advise its employees of the nondisclosure obligation it owed EPI. See R. 148, Tab 4. This provision expressly stated that the obligation not to disclose was to remain in effect until three years after the termination or expiration of the agreement for any reason whatsoever. Id.

In 1988, the parties executed a new contract. Under the 1988 Agreement, EPI transferred and assigned to Brown-Forman "all of its rights, title and interest in and to the Program" and Brown-Forman

2

agreed "to accept the right to control, implement, and promote the Program." R. 148, Tab 11. The 1988 Agreement expressly stated that it was for a term of five years. It also contained an integration clause stating "[t]his agreement contains the entire agreement of the parties relating to the subject matter hereof and supersedes any prior agreements and representations relating to such subject matter that are not set forth herein." Id. The 1988 Agreement did not contain any non-disclosure provisions. EPI received up front a $225,000 consulting fee and approximately $1.8 million over the term of the contract from its percentage of the transaction fees that Brown-Forman received from the Program. Id.

In September 1993, the 1988 Agreement expired by its own terms and Brown-Forman sold the Program to NaBanco Merchant Services Corporation, First Financial Bank, and National Bancard Corporation for more than $31 million. At the time of the sale, EPI was a shell company with few assets. More than six months after the sale to NaBanco, EPI wrote Brown-Forman contending for the first time that the 1988 Agreement was a marketing and consulting contract; that it did not transfer ownership of the Program from EPI to Brown-Forman. After receiving this letter, Brown-Forman filed suit in the Western District of Kentucky seeking a declaration of the parties' rights under the 1988 Agreement. EPI then filed suit in a Texas state court alleging that by the sale to NaBanco, Brown-Forman converted EPI's property, misappropriated its trade secrets, breached their confidential relationship, and tortiously interfered with EPI's contracts. EPI abjured any claim for breach of

3

contract. Brown-Forman removed EPI's case to the United States District Court for the Southern District of Texas. Ultimately, the Kentucky and Texas suits were consolidated.

EPI moved for partial summary judgment seeking a declaration that the 1988 Agreement transferred to Brown-Forman only a limited interest for a limited duration. Brown-Forman filed a cross motion for summary judgment on all of EPI's claims. A magistrate judge recommended granting Brown-Forman's motion. The district court accepted the recommendation in part, entering an order denying EPI's motion for partial summary judgment, granting summary judgment for Brown-Forman on EPI's tortious interference of contract and conversion claims and deferring its ruling on EPI's breach of confidential relationship and misappropriation of trade secrets claims until the magistrate made additional findings in response to EPI's objections to the magistrate's recommendation.

After considering EPI's new arguments, the magistrate again recommended granting summary judgment in favor of Brown-Forman on EPI's remaining claims. After a de novo review, the district court adopted the magistrate's memoranda and recommendations and granted summary judgment against EPI on its breach of confidential relationship and misappropriation of trade secrets claims. EPI appeals the dismissal of its conversion, breach of confidential relationship, and misappropriation of trade secrets claims. This court has jurisdiction under 28 U.S.C. § 1291.

4

Though the parties and the trial court have devoted much attention to whether EPI's claims sound in contract or tort, we need not enter this fray. At oral argument, EPI conceded, and properly so, that for any of its claims to prevail, Brown-Forman must have owed it a duty not to disclose confidential information at the time Brown-Forman sold the Program to NaBanco. We turn first to this issue.

The district court ruled that EPI failed to present evidence of a duty of Brown-Forman not to disclose information about the Program at the time of sale. We review this ruling de novo. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994).

A confidential relationship may arise "'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one.'" Crim Truck & Tractor v.Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992) (quoting Fitz-Gerald v. Hull, 237 S.W.2d 256, 261 (Tex. 1951)). Trusting another or enjoying a cordial relationship of long duration is not enough to establish a confidential relationship. Id. at 594-95. In order to determine the nature of the relationship between EPI and Brown-Forman at the time of sale, we look to the contracts they executed in the course of their dealings with each other. See Norman, 19 F.3d at 1023-24.

Their agreements convince us that at the time of the sale to NaBanco, Brown-Forman had no duty not to disclose information about the Program. The 1988 Agreement manifested their entire agreement

5

and terminated the 1987 Master Agreement. The absence of a nondisclosure provision in the 1988 Agreement is significant. In 1987, the parties bargained for confidentiality to last for three years after their agreement was terminated for any reason. The 1988 Agreement addressed nothing on this score. Assuming the 1988 Agreement did not abrogate the nondisclosure provision of the 1987 Agreement, the best case for EPI, the nondisclosure obligation remained in effect only until 1991, three years after its termination. In 1993, Brown-Forman was free to sell the Program as it did not owe EPI any duty of confidentiality at that time.

EPI's assertions to the contrary are unpersuasive. EPI places great weight on the fact that during their negotiations Brown-Forman recognized the confidential nature of the information surrounding the Program. This observation is of no moment. We agree that at one time Brown-Forman owed EPI a duty of confidentiality. The parties defined that duty by their contract and it expired prior to 1993. The suggestion that a common law duty of confidentiality with open-ended limits of duration and scope was untouched by the written agreements of the parties makes no sense. It would cut the heart from the carefully crafted bargain.

Similarly, Brown-Forman's treatment of the Program as confidential after the 1988 Agreement does not affect our conclusion. First, Brown-Forman was arguably bound by the confidentiality provision in the 1987 Master Agreement. That provision precluded Brown-Forman from disclosing information about

6

the Program until 1991 and required it to advise its employees about the confidential obligation it owed EPI. Second, any representations Brown-Forman made to third parties about the confidential nature of the Program did not affect its nondisclosure obligation. There is no evidence in the record that Brown-Forman's performance demonstrated its intent to alter the deal struck in 1988. Any subjective trust of EPI that Brown-Forman would not disclose the Program after 1991 is not enough to create a confidential relationship. Crim Truck & Tractor, 823 S.W.2d at 595. "The objective intent of the parties controls, and absent an allegation of ambiguity in the contract's language, the contract alone will generally be deemed to express the intent of the parties." Norman, 19 F.3d at 1024.

EPI's reliance on this court's holding in Metallurgical Indus. Inc., v. Fourteck, Inc., 790 F.2d 1195 (5th Cir. 1986) is misplaced as well. In Fourteck, we held that the trial court erred in not admitting into evidence past agreements between the parties which were relevant to whether a confidential relationship existed between them. Id. at 1206-07. Unlike Fourteck, the trial court here examined the prior agreements between EPI and Brown-Forman to determine the nature of their relationship. The parties' bargained for the terms of a confidential relationship and that bargain provided that it expired no later than 1991.

The judgment of the district court is AFFIRMED.